*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 08-1963

*v.*

LASHAWN WILSON,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-20290—Lawrence P. Zatkoff, District Judge.

Argued: November 19, 2009

Decided and Filed: July 19, 2010

Before: MARTIN, BOGGS, and COLE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** John R. Minock, CRAMER & MINOCK, PLC, Ann Arbor, Michigan, for Appellant. Leonid Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** John R. Minock, CRAMER & MINOCK, PLC, Ann Arbor, Michigan, for Appellant. Leonid Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

BOGGS, J., delivered the opinion of the court, in which MARTIN and COLE, JJ., joined. MARTIN, J. (pp. 10-12), delivered a separate concurring opinion, in which COLE, J., also joined.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge. Lashawn Wilson ("Wilson") pleaded guilty to a single count of mail fraud, in violation of 18 U.S.C. § 1341, and was sentenced to 48 months of imprisonment. She now brings this sentencing appeal, arguing that the district court

1

committed plain error by selecting her sentence based on the clearly erroneous premise that she had stolen one thousand money orders and five hundred cashier's checks. We agree, and we therefore vacate her sentence and remand for resentencing.

I

On December 31, 2002, the Assistant Vice President of Fifth Third Bank in Southfield, Michigan, called the United States Postal Inspector Service ("USPIS") to report the theft of one thousand money orders and five hundred cashier's checks. At the time of the call, one hundred sixty-three of the money orders and eleven of the cashier's checks had already been fraudulently negotiated. It was later determined that the instruments had been stolen by one Larry Malone, who then gave a small fraction of them to Wilson with instructions to purchase computer equipment.

On January 6, 2003, the USPIS received a second call in connection with the stolen instruments. This time, the call came from a fraud investigator at Apple Computers. The investigator reported that thirty-five of the stolen instruments had been mailed to the company as payment for eight separate orders. While these orders had been placed under eight different names, they were all shipped to 1727 Elsmere Street, Apartment 2, Detroit, Michigan.

Three days later, federal agents executed a search warrant at the apartment. Wilson was present when the agents arrived and initially identified herself as Tristian Allen. She eventually dropped this name and revealed her true identity, admitting that Tristian Allen was one of several aliases that she had used to purchase computers from Apple, Dell, Compaq, and IBM. She also confessed that she had used thirty-six stolen money orders to make the purchases, which totaled $32,116.40.

The search of Wilson's apartment revealed eight more stolen money orders worth $2,563.41. Agents also turned up numerous carbon copies of money orders, which had been made payable to Apple and used various names. In addition, agents found the personal identification information of five individuals, including social security numbers, driver's license numbers, and dates of birth.

Wilson was subsequently charged with a single count of mail fraud, in violation of 18 U.S.C. § 1341, to which she pleaded guilty on May 13, 2008. During the plea colloquy, the district court asked Wilson about the source of the money orders. She confirmed that they had been stolen by Larry Malone.

On July 24, 2008, Wilson was sentenced. At the hearing, the district court announced that, despite having a Sentencing Guidelines range of 24 to 30 months of imprisonment, Wilson would be sentenced to a term of 48 months. Instead of verbally explaining the basis for this sentence, the district court then called a recess and furnished the parties with copies of a written sentencing opinion, which described the reasons for the court's decision.[1] Prior to the recess, the court indicated that the parties would have as much time as they needed to examine the sentencing opinion and formulate any objections to its contents.[2]

In the sentencing opinion, the district court observed that it "[did] not believe that a sentence within the advisory Guidelines range [was] sufficient to serve the sentencing objectives in 18 U.S.C. § 3553(a)." The district court then applied the § 3553(a) factors, beginning with an assessment of the circumstances of Wilson's offense. Describing those circumstances, the district court incorrectly stated that Wilson herself had stolen the money orders and cashier's checks taken by Larry Malone:

> The circumstances of the offense are serious. *Defendant stole 1000 money orders and 500 cashier's checks from a bank for the purpose of defrauding businesses using the United States mail.* Defendant ordered computers from several companies and paid for the purchases using the stolen money orders. In addition, Defendant used numerous addresses

---

[1]Wilson does not object to the district court's use of a written sentencing opinion to explain the reasons for her sentence. We note, however, that this practice is somewhat disconcerting. Indeed, the use of a pre-prepared sentencing opinion in lieu of an oral recitation creates the worrisome impression that the district court's decision was etched in stone before the parties had the opportunity to be heard. If that were the case, the procedural safeguards enshrined in Federal Rule of Criminal Procedure 32(i) would be drained of meaning. Consequently, we expressly encourage judges who prepare opinions in advance to be particularly mindful of Rule 32(i)'s requirements. In addition, we observe that a final sentencing decision should not be reached until *after* the hearing has been completed.

[2]The record indicates that Wilson received abundant time to review the sentencing opinion. Her hearing began at approximately 11:25 A.M. and did not conclude until 12:55 P.M. Given the fact that the transcript of the hearing was only seventeen pages long, it appears that the large majority of this time was occupied by the recess that the court granted to allow the parties to peruse the sentencing opinion.

and identities of several individuals, presumably stolen, to evade detection. Through this scheme, Defendant managed to purchase at least eight computers. *However, at the time she was apprehended, Defendant had used less than three percent of the instruments she stole but had managed to cause nearly $35,000 in losses.* It is clear that Defendant intended to cause, and would have caused, far more harm if her enterprise had continued.

(emphasis added). Nowhere in the sentencing opinion did the district court mention Malone.

In addition to the circumstances of Wilson's offense, the sentencing opinion discussed a number of other considerations germane to the § 3553(a) factors. Specifically, the opinion addressed the nature of Wilson's offense; her history and characteristics; the need for her sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and the need for her sentence to protect the public from further crimes and provide her with education and correctional treatment. While the opinion indicated that each of these factors warranted a significant term of imprisonment, it did not state that any one of those factors independently justified a term of 48 months.

Once the parties were given an opportunity to scrutinize the sentencing opinion, the district court reconvened the hearing. The parties were then given a chance to raise objections. Wilson's counsel made no objection to the district court's assertion that she had stolen one thousand money orders and five hundred cashier's checks. He did however, raise a number of substantive objections "to the sentence itself," all of which were summarily dismissed.

Wilson now appeals, arguing that her sentence was both procedurally and substantively deficient. We address each of these concerns in turn.

II

We begin with Wilson's procedural argument. She contends that the district court committed procedural error by selecting her sentence based on the clearly erroneous premise that she had stolen fifteen hundred financial instruments. This argument draws on the Supreme Court's oft-referenced decision in *Gall v. United States*, which held that the following errors render a sentence procedurally unreasonable: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, *selecting a sentence based on clearly erroneous facts*, or failing to adequately explain the chosen sentence[.]" 552 U.S. 38, 51 (2007) (emphasis added).

Because Wilson failed to raise her procedural claim before the district court, we must evaluate it under a standard of plain error. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004) ("If a party does not clearly articulate any objection and the grounds upon which the objection is based . . . then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal."). To prevail under this standard, Wilson must "show (1) error (2) that was obvious or clear, (3) that affected [her] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). We find that she has.

A

Turning to the first two parts of the plain-error analysis, we must determine whether the district court made an error that was obvious or clear. *Vonner*, 516 F.3d at 386. Answering this question is a simple matter. In its sentencing opinion, the district court stated that Wilson "stole 1000 money orders and 500 cashier's checks from a bank[,]" and that, "at the time she was apprehended, [Wilson] had used less than three percent of the instruments she stole but had managed to cause nearly $35,000 in losses." These assertions are conspicuously false. Nothing in the record indicates that Wilson was responsible for purloining the instruments. In fact, this notion is directly contradicted by statements made at Wilson's plea colloquy, where it was confirmed that

Larry Malone was the thief. Consequently, we find that the district court committed an obvious mistake.

B

We now move to the third part of the plain-error analysis, which requires us to determine whether the district court's plain error affected Wilson's substantial rights. *Vonner*, 516 F.3d at 386. A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence. *See United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009) ("It is apparent from the record that there was a reasonable probability defendant would have received a more favorable sentence had the district court properly calculated the Guidelines range."); *see also Gonzales-Castillo*, 562 F.3d at 83 (1st Cir. 2009) ("[I]n terms of substantial rights, this prong of the plain error analysis translates, in the sentencing context, into the requirement of a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." (internal quotation marks omitted)); *United States v. Vaughn*, 519 F.3d 802, 805 (8th Cir. 2008) ("To meet the third prong, that the error affected substantial rights, [one] must show a reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." (internal quotation marks omitted)).

In this case, it is apparent that the district court's belief that Wilson had stolen hundreds of financial instruments was an important factor in determining her sentence. In its application of the § 3553(a) factors, the district court's sentencing opinion stated: "The circumstances of the offense are serious. Defendant stole 1000 money orders and 500 cashier's checks for the purpose of defrauding businesses using the United States mail." The district court's description of these serious circumstances also included the observation that "[W]ilson had used less than three percent of the instruments she stole but had managed to cause nearly $35,000 in losses. It is clear that [she] intended to cause, and would have caused, far more harm if her enterprise had continued." In discussing how the circumstances of Wilson's offense should impact her sentence, the

district court noted that they "merit significant punishment." More importantly, the district court explicitly acknowledged that these serious circumstances provided a basis for a lengthy sentence: "Based on the nature and circumstances of this case, the Court finds that 24 to 30 months imprisonment does not accurately reflect Defendant's crime. Therefore, a sentence greater than 30 months imprisonment is necessary to reflect the seriousness of the offense." In light of this language, we think it clear that the district court based Wilson's sentence on the fallacious premise that she had stolen myriad financial instruments.[3] Accordingly, we find it reasonably probable that, absent the district court's misapprehension of the facts, Wilson would have received a more favorable sentence.

The government urges a different conclusion, arguing that, even if the district court believed Wilson had stolen the instruments,[4] that belief was immaterial to the length of her sentence because the sentencing decision considered numerous § 3553(a) factors. This argument is without merit. Though the district court's decision was doubtlessly premised on a number of considerations, that fact does not diminish the absolute impact of the court's belief that Wilson had committed a substantial theft. As noted above, the relevant inquiry is whether there is a reasonable probability that the

---

[3]We note that this court has yet to elucidate when a sentence is "based on" certain facts. A recent unpublished decision indicates that a sentencing court bases its decision on a given fact if that fact was "relied on" in reaching the sentence selected. *See United States v. Mikowski*, 332 F. App'x 250, 253 (6th Cir. 2009) (finding that a sentencing court had not based its selection of a given sentence on a particular fact because the court had "disavowed any reliance upon" that fact). This reading of "based on" finds its roots in a line of cases discussing the due process implications of a sentence reached through consideration of material misinformation of constitutional magnitude. In those cases, this court recognized "a general rule that a violation of due process exists when a sentencing judge relies upon 'erroneous information.'" *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005) (citing *Townsend v. Burke*, 334 U.S. 736 (1948); *United States v. Tucker*, 404 U.S. 443 (1972)). To determine whether a sentencing court "relied on" certain misinformation, the Supreme Court has suggested that appellate courts should analyze whether "the sentence . . . might have been different [in the absence of that information]." *Tucker*, 404 U.S. at 448. In order to do so, courts must look to the sentencing decision with an eye for whether the information in question appears to have been "an important factor in determining [the] sentence." *United States v. Gonzalez-Castillo*, 562 F.3d 80, 81 (1st Cir. 2009); *see also United States v. Baker*, 925 F.2d 728 (4th Cir. 1991) (finding that a sentence was based on a judge's religious beliefs when those beliefs "factored . . . into the sentence imposed on [the defendant]").

[4]The government does not concede that the district court was actually under the impression that Wilson had stolen the financial instruments. Rather, the government contends that, in light of the statements made at Wilson's plea hearing, the district court must have been aware that Larry Malone was the source of the financial instruments. We agree that, at the time of the plea hearing, the district court was most likely aware that Malone had stolen the money orders and cashier's checks. However, the language of the district court's sentencing opinion makes clear that this awareness had faded by the time of sentencing.

clearly erroneous facts contributed to the length of the sentence. Given the prominence of Wilson's supposed theft in the district court's sentencing opinion, it is plain that her sentence might well have been different if the district court had been aware of the true circumstances of her offense.

Only if another of the district court's considerations had independently justified the entirety of Wilson's 48-month sentence could we conclude, under the present facts, that the sentence was not based on the theft. Here, the only sign that Wilson's sentence might remain the same in the absence of the clearly erroneous facts appears in the district court's discussion of the need for her sentence to engender respect for the law. In addressing this issue, the district court stated that "lesser sentences than the one to be imposed in this case have been utterly ineffective . . . ." While this language does indicate that a lengthy sentence was necessary to kindle respect for the law, it does not indicate that a 48-month sentence was necessary. Moreover, the district court's assessment of Wilson's disrespect for the law was likely colored by its mistaken impression that she had stolen a large number of financial instruments. Consequently, we remain convinced that Wilson's supposed theft was an important factor in the selection of her sentence.

C

The fourth and final part of the plain-error analysis requires us to determine whether the district court's error affected the fairness, integrity, or public reputation of the judicial proceedings. *Vonner*, 516 F.3d at 386. "Whether this factor is met is within our discretion to decide." *United States v. Hamm*, 400 F.3d 336, 340 (6th Cir. 2005). We think it appropriate to exercise our discretion in this case, given "the general rule that a violation of due process exists when a sentencing judge relies upon 'erroneous information.'" *Arnett*, 393 F.3d at 686 (6th Cir. 2005). We therefore join the First Circuit in holding that "basing a criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of [judicial] proceedings." *Gonzales-Castillo*, 562 F.3d at 83 (1st Cir. 2009). Consequently, the

fourth part of the analysis is satisfied, and Wilson has demonstrated that the district court committed plain error.

### III

In addition to arguing that her sentence was procedurally defective, Wilson contends that it was substantively unreasonable.  Having found her sentence procedurally unsound, we need not reach this argument.  As the Supreme Court noted in *Gall*, an appellate court is required to assess the substantive reasonableness of a sentence only if the sentence is procedurally sound.  552 U.S. at 51 ("Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard."); *see United States v. Garcia-Robles*, 562 F.3d 763, 768 (6th Cir. 2009) ("Because we conclude that [defendant's] sentence is procedurally unreasonable, we do not consider at this time his arguments that his sentence is substantively unreasonable.").

### IV

In conclusion, we find that the district court committed plain error by selecting Wilson's sentence based on the clearly erroneous notion that she was responsible for the theft of fifteen hundred financial instruments. The district court's opinion conspicuously relied upon plainly incorrect facts.  Furthermore, this reliance affected Wilson's substantial rights because there is a reasonable probability that, if the district court had been disabused of its erroneous impression, she would have received a more favorable sentence. Finally, the district court's error, which implicated Wilson's due process right not to be sentenced on the basis of material misinformation, jeopardized the fairness, integrity, and public reputation of the judicial proceedings.  We therefore VACATE her sentence and REMAND for resentencing.

————————————

**CONCURRENCE**

————————————

BOYCE F. MARTIN, JR., Circuit Judge, concurring.　I concur in the lead opinion, but I feel compelled to comment upon the practice of a judge walking into a sentencing hearing with an opinion already prepared.　The lead opinion quite properly discusses the matter in a footnote, as neither party directly took issue with the practice. I write separately because the practice deserves the kind of piling on that cannot be accomplished in a footnote.

As the lead opinion indicates, the transcript of Wilson's sentencing fills only 17 pages.　The typical sentencing spans more than 60 transcript pages.　This transcript is so short because the judge took the bench having already written a sentencing opinion.　He handed it to the attorneys, told them to read it, and then reconvened to permit the attorneys to lodge any objections.　When conducted in this manner, the sentencing hearing takes on the appearance, if not the reality, of a mere formality.

And, in the circumstance of a sentencing hearing, appearance matters.　The vast majority of federal criminal defendants plead guilty and forego trial.　The plea hearing, while important, is a very scripted affair in which the defendant does little more than respond to the court's questions with a simple yes or no.　That leaves the sentencing hearing as the defendant's only opportunity to interact with the court and the legal system.　It is the defendant's only opportunity to be treated as a person rather than as a statistic.　And more importantly, it is the defendant's only opportunity to perceive the system as something that he can work with as opposed to against.

I am a firm believer that a crucial early step in rehabilitation is the defendant's perception that he was treated with respect by the courts and that he was considered as a human having human faults and human virtues.　In short, he must perceive that he got a fair shake.　Thus, the sentencing hearing, the system's sendoff on the path to rehabilitation, in addition to being actually meaningful, must also *appear* to be

meaningful. The defendant must see his attorney stand up and speak on his behalf, and he must see the judge listen to what the attorney has to say and explain why he is or is not persuaded by the attorney's argument. The final result will be whatever it will be—all that is required is a reasonable sentence—but the process must feel genuine. There is no minimum or maximum on what the judge must say, no list of magic words or phrases, no easily replicable formula or recipe for a "meaningful" sentencing hearing. Instead, all that is required is a dialogue that will allow the defendant to walk away from the hearing knowing what happened and why—nothing more, but nothing less. Indeed, a major undercurrent of the Supreme Court's post-*Booker* sentencing jurisprudence is that, in an advisory guidelines system, the defendant is entitled to an interactive sentencing in which the judge listens and explains rather than merely pronouncing a sentence from on high after having done a little Guidelines math.

This is why the practice of a sentencing judge coming on the bench with an opinion already drafted should not be tolerated. When a judge takes the bench with an opinion in hand, the obvious conclusion is that his mind is already made up, that nothing the defendant or his attorney say will make any difference, and that sentencing is just another step in a largely automated, impersonal process.

To be sure, this is likely not actually the case. The judge no doubt will have read and carefully considered the parties' sentencing memoranda and the pre-sentence investigation report before drafting his opinion, and these materials typically paint an accurate picture of the defendant and his crime. Indeed, it is probably true that most sentencing judges walk into a hearing with at least a strong inclination of what the ultimate sentence will be, regardless of whether they have already written an opinion.

But, again, appearance matters here. Most defendants will not have read the sentencing memoranda and cannot possibly be expected to have understood all of the pre-sentence report. Furthermore, most defendants—probably most Americans—do not understand that judges routinely make rulings based only on the papers. Instead, their understanding of the judicial process is informed by pop culture versions of the law, where lawyers argue in open court to a judge who then issues an oral ruling. A

defendant confronted by a judge who takes the bench with a pre-written opinion, as opposed to one who appears to have an open mind, thus feels that he is receiving something less meaningful than normal.

As far as I can tell, there is nothing illegal about the practice of the judge in this case, and it does appear that the parties had sufficient time to review the opinion. However, just because the practice is permissible does not mean that it should be immune from criticism. Judges are spending increasingly more time behind their desk than on the bench. In most instances, this is fine. But when engaging in the intensely human exercise of pronouncing sentence, everyone benefits when the conversation requires significantly more than 17 pages of transcript.