**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  10a0607n.06

**No. 09-3642**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Sep 13, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| ALAN A. TOWNSEND, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  GUY and GRIFFIN, Circuit Judges; and WILHOIT, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant-appellant Alan A. Townsend appeals his sentence, claiming that the district court erred by applying a two-level sentencing enhancement pursuant to U.S.S.G. § 3B1.1(c) (2008), and otherwise imposed an unreasonable sentence.  We disagree and affirm.

I.

In June 2008, Townsend and his co-defendant, Courtney Shine, began sending messages to a juvenile, referred to as "Victim A," through an internet chat room, UrbanChat.com.  Townsend and Shine contacted Victim A because they wanted her to travel to Florida with them to engage in

---

[*]The Honorable Henry R. Wilhoit, Jr., Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

prostitution. Through these online communications, Victim A led Townsend and Shine to believe she was an adult.

Townsend and Shine began calling Victim A, reassuring her that she would be safe with them. On June 9 or 10, 2008, Shine met Victim A at a local park. On June 13, 2008, Townsend, Shine, and their five-year-old son, along with Victim A, left Columbus, Ohio, by automobile on a trip to Florida. While traveling, Shine received one or more phone calls from Victim A's family informing her that Victim A was a juvenile and that they wanted her to return home. Also during the trip, Townsend attempted to groom Victim A to become a prostitute.

When the group reached Florida, Shine engaged in prostitution. Townsend went with Shine on her "dates," while Victim A stayed behind and babysat their son. The group ultimately traveled to Daytona Beach, Florida. There, when left alone, Victim A used a stranger's cell phone to call the Daytona Beach Police Department. Townsend and Shine were then arrested.

In a videotaped interview with the Daytona Beach Police, Shine admitted she was a prostitute and that she was attempting to assist Townsend in convincing Victim A to engage in prostitution. When Shine returned to Ohio, she was interviewed again, this time by the Columbus Police Department. During this second interview, Shine informed the officers that Townsend had initiated the contact with Victim A on UrbanChat.com.

Like Shine, Townsend was interviewed by the Daytona Beach Police Department following his arrest. During his interview, Townsend made several admissions. For example, Townsend stated: "I pimp hos . . . that's how I came at [Victim A]," and "my first intention was to get this girl

to come work for me . . . . I brought this girl all the way down here, I might as well get something out of her." In addition, Townsend stated: "my game is impeccable, man . . . . if I wanted [Victim A] really to go out there and sell [sex], I could have had her do it[,]" boasting that he was "reeling her in slowly but surely."

As Townsend's interview with the Daytona Beach Police continued, he went into greater detail regarding his role as a pimp, stating that he required his prostitutes to pay him $1,500 a day from their "dates." He also said that he did not discuss the specifics of his prostitution business with Victim A, because "she wasn't . . . a part of [his] team yet" and would not learn "everything until she actually put some money in [his] hand." Townsend further informed the officers that he had been the pimp for as many as four prostitutes.

On July 12, 2008, jail officers recorded a telephone conversation between Shine and Townsend. During this conversation, Townsend instructed Shine to engage in limited prostitution while he was incarcerated, stating: "the ones that you know you can do by yourself, I want you to do that, don't do nothing new at all." He further lamented that he should have allowed Shine to make pornographic movies instead of prostituting. During this discussion, Townsend and Shine intermittently discussed their pending criminal charges and the evidence against them. In addition, the recorded conversation reveals that Townsend and Shine were involved in a romantic, as well as a business, relationship.

II.

On December 3, 2008, Townsend pleaded guilty to Count 4 of the indictment, charging him with knowingly transporting an individual in interstate commerce with the intent to engage such individual in prostitution, in violation of 18 U.S.C. § 2421 and 18 U.S.C. § 2. The presentence investigation report ("PSR") recommended a base offense level of 24 pursuant to U.S.S.G. § 2G1.3(a)(4) (2008), and a two-level enhancement for his aggravating role in the offense under U.S.S.G. § 3B1.1(c). Townsend's criminal history was set at category V based on 10 criminal history points. The PSR also afforded a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, yielding a total offense level of 23, and an advisory Guidelines range of 84-105 months of imprisonment. *See* U.S.S.G. ch. 5, pt. A (Sentencing Table) (2008).

The district court conducted a sentencing hearing on May 22, 2009. At the hearing, Townsend objected to the two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c), asserting that he was in an "equal partnership" with Shine. Relying upon Shine's and Townsend's police interviews, as well as the recorded jailhouse conversation, the district court denied Townsend's objection, ruling that he performed "the traditional role of pimp" and "was the manager of the prostitution activities." The district court found that, although Shine was a willing participant in the offense, "there was a leader, and it was Mr. Townsend. So, even if Ms. Shine were a partner, . . . Mr. Townsend's role here was senior partner." The district court thereafter sentenced Townsend to ninety-six months of imprisonment.

III.

On appeal, Townsend challenges the district court's imposition of the two-level U.S.S.G. § 3B1.1(c) sentencing enhancement. Regarding this issue, we note that our standard of review is unsettled:

> The standard that governs the review of a sentencing enhancement for a leadership role under U.S.S.G. § 3B1.1 is not altogether clear. A district court's legal conclusions are generally reviewed de novo, and its factual findings will not be set aside unless clearly erroneous. In *Buford v. United States*, 532 U.S. 59, 121 S. Ct. 1276, 149 L.Ed.2d 197 (2001), however, the Supreme Court held that a district court's application of the Guidelines should be reviewed deferentially rather than de novo "in light of the fact-bound nature of the legal decision." *Id.* at 66, 121 S. Ct. 1276.

*United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (internal citation omitted), *cert. denied*, 130 S. Ct. 476 (2009). Nonetheless, we need not decide the question here because we conclude that the sentencing enhancement was appropriate under either standard.

A district court may increase a defendant's offense level if the defendant was an "organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, cmt. n.2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1. In determining whether a § 3B1.1(c) sentencing enhancement is appropriate, a district court should consider the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2007) (internal quotation marks and citation omitted). "Merely playing an essential role in the offense is not equivalent to exercising managerial control over other participants." *Id.* (internal quotation marks and citation omitted). "The government bears the burden of proving that the enhancement applies by a preponderance of the evidence." *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000).

Townsend challenges the district court's reliance on the recorded jailhouse conversation. Specifically, Townsend asserts that his statement to Shine – "the ones that you know you can do by yourself, I want you to do that, don't do nothing new at all" – constitutes post-offense conduct and, therefore, may not be used to establish his managerial control because it did not "occur[] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a) (defining scope of relevant conduct).

However, a sentencing court may consider all relevant conduct when deciding whether to impose a § 3B1.1(c) enhancement. Indeed, the introductory comments to § 3B1.1 clearly indicate that a district court's analysis of an individual's role in the offense is to be made on the basis of *all* relevant conduct, "and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. § 3B1.1 (intro. cmt.). Accordingly, a district court should consider "criminal activity encompassing not only the charged offense but also all other activity that was part of a common scheme or plan or part of the same course of conduct as the charged offense." *United States v. Jones*, 12 F.3d 215, 1993 WL 494133, at *6 (6th Cir. Nov. 29, 1993) (unpublished table opinion).

Here, the district court expressly stated that it had reviewed the jailhouse conversation to ascertain "[t]he nature of the relationship" between Townsend and Shine. Certainly, the relationship between Townsend and Shine, and Townsend's authority to direct her prostitution activities, was relevant regarding his control over her during the course of their criminal conduct. *See Vandeberg*, 201 F.3d at 811 ("In general, a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.") (internal quotation marks and citation omitted).[1] Accordingly, the district court's consideration of the jailhouse conversation was relevant and proper in this case.

Townsend also asserts that the district court erred in imposing the sentencing enhancement because there was no evidence that he played an aggravating role in the underlying offense. We disagree. The record reveals ample evidence of Townsend's aggravating role. First, Townsend's own statements during the jailhouse conversation, as well as his police interview, support the inference that Townsend was "pimping" Shine during the offense, and therefore had an inherent degree of control over her. Indeed, Townsend lamented to Shine that he should have "let" her make pornographic movies, evidencing his authority over her.

In addition, the record supports the finding that Townsend had a greater "degree of participation in planning [and] organizing the offense." *Lalonde*, 509 F.3d at 765. According to Shine, Townsend was the first to discover and contact Victim A in order to engage her in prostitution

---

[1]Townsend's title of "pimp" is not controlling here. *See* U.S.S.G. § 3B1.1, cmt. n.4 (noting that "titles such as 'kingpin' or 'boss' are not controlling"). Instead, it is the level of control asserted over Shine that the district court appropriately considered.

activities. In addition, Townsend made several admissions during his police interview demonstrating his significant role in planning and organizing the offense, such as: "I pimp hos . . . that's how I came at [Victim A]," "my first intention was to get this girl to come work for me . . . . I brought this girl all the way down here, I might as well get something out of her," and "my game is impeccable, man . . . . if I wanted [Victim A] really to go out there and sell [sex], I could have had her do it." These statements further indicate that Townsend had decision-making authority, inasmuch as he claims he had the ability to determine whether Victim A engaged in prostitution. Indeed, Townsend asserted at sentencing that he was the decision-maker with regard to Victim A's prostitution activities.

In sum, under either a de novo or clearly erroneous standard of review, we hold that the factual record as a whole supports the district court's application of the § 3B1.1(c) enhancement. There was sufficient evidence in the record for the district court to conclude, by a preponderance of the evidence, that Townsend exercised managerial control over Shine during the offense as evidenced by his decision-making authority, his significant role in planning and organizing the crime, and his ability to exercise authority over Shine.

IV.

Next, Townsend claims that his within-Guidelines sentence is procedurally and substantively unreasonable. We review the district court's sentencing decisions for an abuse of discretion. *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 166 (2009). Reasonableness review has both procedural and substantive components. *United States v. Sedore*,

512 F.3d 819, 822 (6th Cir. 2008). We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). If the sentence is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* In assessing substantive reasonableness, we determine "whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States. v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 93 (2008). We apply a rebuttable presumption of substantive reasonableness to sentences that fall within the applicable Guidelines range. *Sedore*, 512 F.3d at 823.

### A.

Townsend argues that his sentence is procedurally unreasonable because the district court allegedly improperly applied the § 3B1.1(c) sentencing enhancement. For the reasons described above, we disagree because the district court did not err in applying the enhancement.

Secondly, Townsend asserts that his sentence is procedurally unreasonable because the district court purportedly fashioned his sentence based upon material misinformation. Specifically, he asserts that resentencing is warranted because the district judge mistakenly believed he had sentenced Shine at the top of her Guidelines range, when, in fact, he had sentenced her below her Guidelines range. This argument is meritless.

Regarding this issue, Townsend relies on *United States v. Wilson*, — F.3d —, No. 08-1963, 2010 WL 2802730 (6th Cir. July 19, 2010). However, *Wilson* is inapposite. In *Wilson*, we held that the sentencing court "committed plain error by selecting [the defendant's] sentence based on the clearly erroneous premise that she had stolen one thousand money orders and five hundred cashier's checks." *Id.* at *1. However, unlike *Wilson*, in the present case the district judge did not impose Townsend's sentence based on material misinformation regarding Townsend's *underlying criminal conduct*. The error at issue regards the sentence of co-defendant Shine.

Moreover, Townsend made no objection to the misstatement. Therefore, we review for plain error. *See United States v. Vonn*, 535 U.S. 55, 66 (2002) ("A defendant's right to review of error he let pass in silence depends upon the plain-error rule."). To prevail under plain-error review, a defendant must show, among other things, that the error affected his substantial rights. *Lalonde*, 509 F.3d at 757. A sentencing error affects a defendant's substantial rights when there is a "reasonable probability defendant would have received a more favorable sentence" but for the error. *United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009). After our review of the sentencing transcript, it is clear that Shine's sentence was not an "important factor" relied on by the district court in fashioning Townsend's sentence. *See Wilson*, 2010 WL 2802730 at *4 (noting that the underlying misinformation was an "important factor" in determining the defendant's sentence, thereby demonstrating that the sentencing error affected the defendant's substantial rights). Instead, while the district court made a passing reference to Shine's sentence, it expressly noted and based its sentence upon Townsend's underlying criminal conduct, his history and characteristics, and the need

to protect the public and promote deterrence. These were the "most significant" factors considered by the district court in fashioning the sentence. Accordingly, we conclude that no plain error occurred.

B.

Townsend's substantive reasonableness arguments are equally meritless. First, he claims that his ninety-six month sentence is disparate as compared to Shine's thirty-six month sentence. However, pursuant to 18 U.S.C. § 3553(a)(6), a district court must consider "the need to avoid unwarranted sentence disparities among *defendants with similar records* who have been found *guilty of similar conduct*." 18 U.S.C. § 3553(a)(6) (emphasis added). Here, Shine did not play an aggravating role, and she had a much less significant criminal history. Indeed, Shine had a category I criminal history, as compared to Townsend's category V. Thus, Townsend and Shine are not similarly situated.

Moreover, "[s]ubsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008) (internal quotation marks and citation omitted), *cert. denied*, 129 S. Ct. 2764 (2009). Indeed, § 3553(a)(6) "is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants." *United States. v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Thus, Townsend's argument is not persuasive.

Finally, Townsend asserts that his sentence is substantively unreasonable because the district court did not grant him a downward departure. In this regard, Townsend argues that his criminal history category over-represented the seriousness of his criminal history. *See* U.S.S.G. § 4A1.3(b)(1) (2008) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."). However, "[t]his court generally does not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Johnson*, 553 F.3d 990, 999 (6th Cir. 2009) (internal quotation marks and citation omitted). Here, there is nothing in the record indicating that the district judge did not understand his discretion to make a downward departure, and, therefore, we decline to review the district court's discretionary decision.

In sum, Townsend's sentence was within his Guidelines range and therefore is entitled to a presumption of reasonableness. *Sedore*, 512 F.3d at 823. Townsend has not sustained his burden of rebutting the presumption that his ninety-six month sentence is substantively reasonable.

V.

For these reasons, we affirm the judgment of the district court.