**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0152n.06
Case No. 19-5333

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Mar 13, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DUSTIN WILLIAM PETERSON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

SUTTON, Circuit Judge. Dustin Peterson pleaded guilty to the unlawful possession of a firearm. The district court sentenced him to 110 months of imprisonment. Peterson claims the district court erred when it imposed this within-guidelines sentence based in part on his mental health problems. We affirm.

The Ides of March was not a good day for the Peterson family in 2017. Dustin, the husband and father, started the day off consuming an array of drugs. He argued with his wife and apparently decided a firearm would get his point across. He found a pistol, cocked it, and told his family that "he was going to kill them all." R.12 at 1. Peterson's wife tried to call 911. Peterson stopped her, pushing her onto a couch. The couple's four-year-old daughter jumped into Mrs. Peterson's lap. As she sat in between her parents, Peterson placed the gun against Mrs. Peterson's head and told her, "I'm going to blow your head off." *Id.* He thought better of it. Peterson's ten-year-old tried

to call 911. But Peterson spotted him and pointed the pistol at him. Mrs. Peterson found a way to distract Peterson, then fled the home with the children and called the police.

Officers arrived at Peterson's home to find his father Olaf standing on the porch. Olaf opened the door, revealing Peterson, now armed with a shotgun. Peterson pointed the weapon at his father and the deputy, ignoring police commands to drop the gun. Olaf showed less restraint, tackling Peterson into the house. As they struggled, one of Peterson's guns went off, hitting Peterson in the leg. Officers surrounded the home. When the pair came back outside, Peterson continued to ignore commands to get on the ground. Officers tased him and finally took him into custody.

The State of Tennessee convicted Peterson of domestic assault.

The United States charged him with one count of unlawful possession of a firearm, to which he pleaded guilty. 18 U.S.C. § 922(g)(9). The district court imposed a within-guidelines sentence of 110 months and a term of supervised release.

Peterson challenges one aspect of his sentence. He claims the court erred when it treated his mental health problems as an aggravating factor. Because Peterson failed to raise this concern below, even after being given a chance to do so, we review the court's decision for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Peterson must show (1) error (2) that was obvious or clear, (3) that affected his substantial rights and (4) that affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

We do not need to decide whether the court erred or even plainly erred. *Compare United States v. Moses*, 106 F.3d 1273, 1280 (6th Cir. 1997), *and United States v. Arnold*, 671 F. App'x 366, 367 (6th Cir. 2016), *with United States v. Owen*, 940 F.3d 308, 317 (6th Cir. 2019), *and United States v. Bailey*, 438 F. App'x 467, 471 (6th Cir. 2011). Even if we assume for the sake of

argument that the court should not have considered his mental health, any error did not affect his substantial rights.

To meet this requirement, there must be a "reasonable probability" that, but for the mistake, the district court would have imposed "a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223–24 (6th Cir. 2010). But the record is barren of indications that the court would have sentenced Peterson differently had it not considered his "anger management and impulse control" problems. R.37 at 21.

Keep in mind the uphill battle that Peterson faced at sentencing. His guidelines range, prior to his acceptance of responsibility, exceeded the statutory maximum of 120 months. *See* 18 U.S.C. § 924(a)(2). A long history of violence, domestic abuse, theft, and offenses involving weapons, combined with serial evasions of protective orders obtained by his wife, placed him in an unenviable situation. His criminal past and his unwillingness to deviate from it, not his mental health issues, drove the district court's sentencing decision.

Consider the court's explanations. After describing the seriousness of Peterson's crime, it emphasized that he had "endangered the lives of numerous people, including [his] two children and that officer." R.37 at 28. This fit a pattern of behavior, the court thought: "Mr. Peterson, so far as I can tell, you . . . have no respect for the law. You have a criminal history category of [six], and you're only 36 years old." *Id.* The court also noted that, despite "an order of protection signed by a state court judge," Peterson had contacted or attempted to contact his wife 900 times in little over a year. *Id.* at 20, 28. This background created two imperatives for the court. It needed to impose a sentence to promote respect for the law "because when the public believes that the courts don't treat these kinds of matters seriously . . . that leads to a loss of confidence on the part of the

3

public." *Id.* at 29. And it needed to protect the public from Peterson given his "tendency to violate the law repeatedly" and his "history with guns." *Id.*

As to this last point, the court cited Peterson's 2007 charge for aggravated assault, when he pulled a gun on a woman and threatened to kill her. It then cited his 2009 conviction for reckless endangerment when he went to a couple's home and pointed a shotgun at them.

The court expressed concern about Peterson's mental health just two isolated times during the hearing. It noted that Peterson's violent past combined with a "history . . . of anger issues and impulse control issues" made him "a real and sustained threat to the public." *Id.* at 30. And it noted that "[t]here's certainly nothing in your personal history short of the mental health issues, the anger management issues, the substance abuse, that are of any significance, and all of those, frankly, untreated, simply suggest that you are a higher risk of reoffending." *Id.* at 33. None of this indicates that mental health considerations, whether fair game or not, made much of a difference. *Cf. United States v. Doyle*, 711 F.3d 729, 736 (6th Cir. 2013); *Wilson*, 614 F.3d at 224.

If anything, the record shows the court's choice of a sentence—a ten-month *reduction* from the statutory maximum—turned on Peterson's acceptance of responsibility. The court noted the "great deal of evidence in this record to support" imposing the statutory maximum but opted not to take that path because "there ought to be a benefit to a defendant who [pleads guilty] . . . and if I sentenced you to the statutory maximum, there's no real benefit of doing that." R.37 at 24. All in all, Peterson is fortunate to be alive and serving fewer than 120 months.

Peterson resists this conclusion on two grounds.

First, he tells us, in his reply brief, that plain-error review does not apply. That is too late for one. Appellate arguments must be raised in the opening brief. And it is wrong for another. Yes, Peterson asked the court for less prison time because of his mental health issues. But that's

not the issue he raises today. In Peterson's words, he asked this question on appeal: "Did the district court commit significant procedural error when it *extended* Dustin Peterson's sentence by 18 months in large part due to his untreated mental health issues?" Appellant Br. 3 (emphasis added).

The district court at any rate did not abuse its discretion in rejecting Peterson's mental health as a mitigating factor. Peterson presented little to no evidence documenting his mental illness. And he admitted that he had not participated in mandatory treatment programs because he was "too busy getting high" and "I didn't think I needed it." R.37 at 19. The court properly cited Peterson's lack of concern about seeking help as a reason not to depart.

Second, Peterson insists that the court's decision affected his substantial rights because it denied him the "ordinary benefit" of his guilty plea. But the court never tied Peterson's mental health to his guilty plea. In truth, Peterson seems to misunderstand how acceptance of responsibility affects sentences. His guilty plea convinced the court that he qualified for the credit. The court's conclusion reduced his offense level from 26 to 23. U.S.S.G. §3E1.1.(a). This change shifted his guideline range from 110–137 months down to 92–115 months. But his contrition did not entitle him to any specific sentence within that range. No reversible error occurred.

We affirm.