NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0361n.06

Case No. 23-5057

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>TIMOTHY SIZEMORE,<br><br>    Defendant-Appellee.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><strong>FILED</strong><br>Aug 20, 2024<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY<br><br>O P I N I O N</td></tr>
</table>

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Defendant Timothy Sizemore appeals his sentence of 26 months' imprisonment after his conviction for conspiring to operate cockfighting events in eastern Kentucky. From November 2018 to January 2020, and again from May 5, 2020, to December 4, 2021, Sizemore organized weekly cockfighting pits. The break in activity came after federal agents interviewed Sizemore and warned him to cease his criminal activity. He responded by shutting down operations at one location, but he quickly resumed managing cockfighting pits elsewhere. Sizemore was subsequently indicted and pleaded guilty to two conspiracy charges. At sentencing, the district court made several references to the number of times law enforcement warned Sizemore about his actions and the number of times he returned to cockfighting. On appeal, Sizemore maintains that the district court's statements were factually erroneous and that its reliance on erroneous facts resulted in a procedurally and substantively unreasonable sentence.

Because the record supports Sizemore's assertion that the district court relied on erroneous information in imposing its sentence, we **VACATE** the sentence as procedurally unreasonable, decline to address the question of substantive reasonableness, and **REMAND** for further proceedings.

**I.**

**A.**

From November 2018 to January 2020, and again from May 5, 2020, to December 4, 2021, Sizemore organized weekly cockfighting pits in eastern Kentucky. An investigation by the United States Department of Agriculture Office of Inspector General (USDA-OIG), revealed that Sizemore was operating two cockfighting pits near Manchester, Kentucky. He managed one pit called Riverside Game Club ("Riverside") that included "stadium style seating, storage areas under the seating for storing live birds, enclosed cockfighting pits, a concession stand, two areas for weighing birds, a room for selling animal fighting accessories, and two additional side pits for fights." (R. 197, PageID 626). At the same time, Sizemore operated a second pit called Laurel Creek pit for nighttime fights. From approximately July 2019 through January 2020, USDA-OIG used a confidential human source ("CHS") to conduct multiple undercover operations at Riverside. During this period, Sizemore organized and managed cockfights at Riverside that included a total of approximately 145 bird entries.

In January 2020, law enforcement warned Sizemore that he was being investigated for cockfighting. Sizemore shut down Riverside in response. But by May 2020, he had started managing a new cockfighting pit called Blackberry Chicken Pit ("Blackberry") in Pike County, Kentucky. Federal officials began investigating Blackberry in early 2021. They observed Sizemore and codefendant Perry Hatfield manage multiple cockfighting events involving a total

of approximately 157 bird entries until December 2021. And in January 2022, based on information from a CHS that the CHS had recently attended more cock fights at Laurel Creek run by Sizemore, the Kentucky State Police shut down another apparent cockfighting event held there.

**B.**

A federal indictment followed, charging four felony counts: two counts of conspiracy under 18 U.S.C. § 371 to knowingly sponsor and exhibit animals in an animal fighting venture and two counts of knowingly using an instrumentality of interstate commerce for commercial speech to promote an animal fighting venture in violation of 7 U.S.C. § 2156. Pursuant to the terms of a plea agreement, Sizemore pleaded guilty to the two conspiracy counts and the remaining counts were dismissed. The United States Probation Office prepared a presentence report ("PSR") which recommended an advisory sentencing-guidelines range of 24 to 30 months' imprisonment, based on a total offense level of 17 and a criminal history category of I. The government moved for an upward departure to 40 months' imprisonment under United States Sentencing Guidelines § 2E3.1, arguing that Sizemore's offense "involved animal fighting on an exceptional scale." Conversely, Sizemore requested a sentence of three months of intermittent confinement to be followed by six months of home confinement. The district court sentenced Sizemore to a sentence of 26 months' imprisonment and two years of supervised release to follow.

In doing so, the court considered several aggravating factors, including the cruelty of the sport, the number of birds involved, the sophistication of the operations, and the substantial amount of money involved. Relevant here, the court also made numerous references to Sizemore's return to cockfighting after receiving warnings to stop from law enforcement officials. Included among these references were six erroneous statements about the number of times Sizemore received law-

enforcement warnings about his criminal activity and the number of times he returned to cockfighting after being warned:

1. "You were warned *multiple times* by law enforcement, . . . including federal law enforcement, but continued with this stubborn illegal activity." (R. 206, PageID 686) (emphasis added).

2. "As I said, your case is different than others because you were warned *multiple times* and you continued with your illegal activity." (*Id.* at PageID 687) (emphasis added).

3. "Here are the aggravating factors that I have already mentioned: Your stubborn return to criminal conduct even after the intervention of federal law enforcement and the intervention—*it's my understanding four times of* (sic) *law enforcement who intervened*—the cruelty and the number of birds in this case; the sophisticated and substantial—the sophisticated means; the substantial amount of dollars; and, as I mentioned, the number of birds here." (*Id.* at PageID 688) (emphasis added).

4. "[B]ut you are the one that put your family, your daughter, in this situation— nobody else did—by your stubborn and *repeated return* to criminal conduct." (*Id.* at PageID 691) (emphasis added).

5. "Your level of leadership, the sophistication, your level of involvement and your *repeated return* to criminal activity . . . ." (*Id.* at PageID 692) (emphasis added).

6. ". . . after *four warnings* and all the other aggravating factors that I mentioned set you apart from [the other codefendants]." (*Id.*) (emphasis added).

The district court acknowledged that Sizemore's "stubborn return to cockfighting notwithstanding the intervention of federal law enforcement" was only "[o]ne of the aggravating factors." (*Id.* at PageID 685). And the court also considered several mitigating factors, including Sizemore's work history, familial support, and his lack of prior criminal behavior. Viewed together, however, the court concluded that the aggravating factors—chief among them, Sizemore's repeated returns after multiple warnings—"compel[ed] the Court to a guideline sentence." (*Id.* at PageID 688, 689–90).

## II.

Sizemore did not raise a procedural challenge during sentencing. We, therefore, review the procedural reasonableness of his sentence for plain error. *See United States v. Wallace*, 597

F.3d 794, 802 (6th Cir. 2010) (citing *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008)) (en banc). To show plain error, a defendant must establish that the district court "committed (1) an error that was (2) plain and (3) affected his 'substantial rights.'" *United States v. Simmonds*, 62 F.4th 961, 964 (6th Cir. 2023) (quoting *Greer v. United States*, 593 U.S. 503, 507-08 (2021)), *cert. denied*, 144 S. Ct. 163 (2023) (mem.). "If he can satisfy those three 'threshold requirements,' then we have discretion to grant relief only if we conclude 'that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Greer*, 593 U.S. at 507-08) (alterations in original). The ability to satisfy all four prongs is "difficult." *Id.*

**III.**

*Procedural Reasonableness.* Sizemore maintains that his sentence was procedurally unreasonable because the district court relied on erroneous facts. Specifically, Sizemore argues that the district court relied on the unsupported contention that law enforcement warned him multiple times to stop his criminal activity and that he continued anyway. A sentencing court imposes a procedurally unreasonable sentence when it "relies upon erroneous information." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (quoting *United States v. Wilson*, 614 F.3d 219, 225 (6th Cir. 2010)) (applying abuse of discretion standard). The record demonstrates that is the case here.

Sizemore returned to cockfighting after being warned by federal law enforcement only once. Specifically, federal agents visited and warned Sizemore that he was under investigation for cockfighting in January 2020, after which he closed Riverside but then started operating Blackberry and later, Laurel Creek. Then, following a visit from the KSP in January 2022, Sizemore shut down Laurel Creek. There is no evidence in the record that he resumed operations again. Thus, the district court's suggestion that Sizemore returned to cockfighting after being

warned by law enforcement multiple times was a clear error. *See Vonner*, 516 F.3d at 386 (noting that plain error is an error that is "obvious or clear") (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

This error, standing alone, however is not enough. Sizemore must also show that the district court's error affected his substantial rights. *See id*. "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *Wilson*, 614 F.3d at 223 (citing *United States v. Baker*, 559 F.3d 443, 454 (6th Cir.2009)). To evaluate whether that is the case, we must "look to the sentencing decision with an eye for whether the information in question appears to have been an important factor in determining the sentence." *United States v. Hatcher*, 947 F.3d 383, 390 (6th Cir. 2020) (internal brackets and quotations omitted) (quoting *Wilson*, 614 F.3d at 224 n.3). Even if a district court cites erroneous information during sentencing, there is no procedural unreasonableness unless the "district court relied on the information being challenged." *Id.*

We look to the record to ascertain whether the court relied on the erroneous information. For instance, in *Wilson*, we vacated a defendant's sentence because the record showed that the court based its sentence on a clearly erroneous fact—Wilson's supposed theft of money orders and cashier's checks. 614 F.3d at 221, 226. In reviewing the record there, we noted that Wilson's plea agreement made clear that she had only *used* fraudulent instruments; someone else had stolen them. *Id*. at 221, 224. Yet, the district court's language at sentencing made it "apparent" that it not only harbored the mistaken belief that Wilson had stolen the financial instruments, but it also considered the theft "an important factor in determining her sentence." *Id*. at 224. Its relative importance was revealed when the district court explained that the circumstances of Wilson's offense were serious, in part, because she had stolen the money orders "for the purpose of

defrauding businesses." *Id*. The district court then emphasized that these (erroneously described) circumstances warranted a longer—in that case above-Guidelines—sentence "to reflect the seriousness" of her actions. *Id.* We reasoned that Wilson readily satisfied the third prong of plain error because, "[g]iven the prominence of Wilson's supposed theft in the district court's sentencing opinion, it [was] plain that her sentence might well have been different if the district court had been aware of the true circumstances of her offense." *Id*. at 225; *see also Hatcher*, 947 F.3d at 390 (court's reliance on defendant's alleged participation in uncharged shooting incident demonstrated by court's multiple references to facts underlying the incident and a final statement both referencing the incident and indicating upward variance was warranted "for those reasons").[1]

The district court's multiple statements about Sizemore's unheeded warnings here, taken together, indicate that this mistaken information was an "important factor" in determining Sizemore's sentence. Considering the references in sequence, the first and second do not definitively establish reliance, but they do serve as a launching pad for a series of erroneous statements that threaded throughout the proceedings. The court's first reference came during its discussion of the "nature and circumstances of [Sizemore's] offense and its seriousness." (R. 206, PageID 684). In describing Sizemore's conduct, the district court stated that Sizemore was warned "multiple times" by law enforcement "but continued with [his] stubborn illegal activity." (*Id*. at PageID 686). Building on this understanding, the district court next observed that Sizemore's case was "different than others because" he was "warned multiple times," yet he "continued with [his] illegal activity." (*Id*. at PageID 687). Considering that the second reference came during the

---

[1] Though *Hatcher* centered on "surprise" information—evidence that may be based in fact but that is not included in the record "or otherwise reasonably foreseeable" as a sentencing consideration—its discussion of reliance applies with equal force in the context of erroneous or "non-existent" evidence as is the case here because, under either scenario, plain error analysis requires a showing of the court's reliance on the challenged information.

court's discussion of the 18 U.S.C. § 3553(a)(2)(A) factor addressing the need "to promote respect for the law, and to provide for just punishment," the number of warnings seemed to inform the court's assessment in that regard. (*Id.* at PageID 686).

The third reference came during the discussion of the aggravating factors which "compel[ed] the Court to a guideline sentence . . . ." (*Id.* at PageID 688). While discussing Sizemore's "stubborn return to criminal conduct even after intervention by federal law enforcement," the court erroneously interjected its belief that law enforcement had intervened "four times." (*Id.*). To be sure, the court discussed other factors like the cruelty of the sport, the number of birds involved, the sophistication of the operation, and the substantial amount of money involved. Yet, these other aggravators appear to have carried less weight in the court's calculus based on its concluding statement that it found particularly aggravating Sizemore's "stubborn return to criminal conduct." (*Id.*). Just as the *Wilson* district court's reference to the defendant's alleged theft of financial instruments to defraud the government demonstrated that erroneous fact's prominence in its reasoning, the district court's "four times" interjection here, signifies its clear and unmistakable reliance on this mistaken fact. *See Hatcher*, 947 F.3d at 391.

The fourth, fifth, and sixth references are less direct than the third but, together, suggest that the district court's misstatements affected the outcome of Sizemore's sentence. The court's fourth reference was in response to Sizemore's entreaty for the court to impose a below-guidelines sentence, combining intermittent and home confinement so that Sizemore could more readily maintain his work and familial relationships. In rejecting this argument, the court stated that Sizemore's "stubborn and *repeated* return to criminal conduct" had created this situation. (R. 206, PageID 691) (emphasis added). The court's fifth and sixth references occurred during the court's differentiation of Sizemore's situation from that of his codefendants, each of whom received

significantly lower sentences than Sizemore. The court stated that, among other things, Sizemore's "repeated return to criminal activity after four warnings," and "all the other aggravating factors" mentioned above set Sizemore apart from his codefendants. (*Id*. at PageID 692). While the court also emphasized Sizemore's managerial role as an important aggravating factor, its continued reference to his recurrent returns to cockfighting after four warnings from law enforcement seems to encapsulate the court's erroneous understanding of the record and underscores its influence on the sentence imposed.

In context, it is difficult to see how these errors were not consequential. The statements were not the product of "one stray comment at sentencing," as the government suggests in commending to us *United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021). The district court's multiple misstatements suggest that the erroneous information was at the forefront of its considerations. True, not every reference to Sizemore's return to criminal activity mentioned multiple warnings. And that fact leaves room for the possibility that the court's reference to his "stubborn" return or simply his "return" only relied on the accurate fact that Sizemore engaged in multiple episodes of cockfighting after being warned. But if that were the case, then there would have been no need to mention the number of warnings. It seems more likely that the court made the connection that its words imply: Sizemore repeatedly returned to running cockfights after four law-enforcement warnings. On that score, the record and the district court's concluding statements create a reasonable probability that these facts aggravated his conduct, set him apart from his codefendants in the eyes of the court, and guided its sentence.

Our final consideration is "whether the district court's error affected the fairness, integrity, or public reputation of the judicial proceedings." *Wilson*, 614 F.3d at 225 (citing *Vonner*, 516 F.3d at 386). We have broad discretion to assess whether this factor is satisfied and have previously

observed that "basing a criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of [judicial] proceedings." *Id.* at 225–26 (quoting *United States v. Gonzalez-Castillo*. 562 F.3d 80, 83 (1st Cir. 2009). Here, the court relied on a non-existent material fact: that Sizemore returned to cockfighting multiple times after receiving repeated warnings. And, because the record supports the conclusion that the court relied on this erroneous information for Sizemore's sentence, we deem it appropriate to exercise our discretion here. While the court arrived at a within-Guidelines sentence and its discussion of the sentencing factors is otherwise comprehensive and thorough, its repeated references and singling out of Sizemore's multiple warnings and returns to cockfighting as a distinguishing feature of his criminal conduct raises a reasonable probability that Sizemore may have received a lower sentence but for the error. This directly undermines the confidence we have in the outcome.

**IV.**

Because we find that Sizemore's sentence is not procedurally sound, we forego analysis of its substantive reasonableness. *See United States v. Thomas-Mathews*, 81 F.4th 530, 541 (6th Cir. 2023) (emphasizing that we do not analyze a sentence's substantive reasonableness unless the sentence is procedurally sound).

\* \* \*

For the reasons stated, we **VACATE** the district court's sentence and **REMAND** for further proceedings.