NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0322n.06

Case No. 22-3678

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 14, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| JABROWN PARKS, | ) ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: CLAY, GRIFFIN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Defendant-Appellant Jabrown Parks appeals his sentence for supervised release violations as procedurally and substantively unreasonable. Parks served substantial time in federal prison for bank robbery and brandishing a firearm during and in relation to a crime of violence. After his release from custody and two years into his five-year term of supervised release, Parks was arrested for attempting to rob a woman at gun point. While on bond for that offense, he robbed another bank. He was tried and found guilty of the bank robbery in state court and received a sentence of twenty-two years in prison. Parks subsequently admitted, during a violation hearing in federal court, that he breached the terms of his supervised release. As a result, the district court revoked his supervised release and imposed an above-Guidelines sentence to be served consecutively to his state sentence. For the reasons that follow, we affirm.

**I.**

In 2003 Parks and two others were indicted in the Southern District of Ohio in connection with two bank robberies. Counts 1 and 2 of the indictment pertained to a September 2003 robbery of U.S. Bank in Columbus, Ohio. And Counts 3 and 4 stemmed from a December 2003 robbery of First Federal Savings and Loan in Pataskala, Ohio. Parks's two co-defendants were charged in all four counts, but he was charged only in the latter two. He pleaded guilty to Count 3 for armed bank robbery of First Federal Savings and Loan and to Count 4 for brandishing a firearm during the robbery. The district court sentenced Parks to 87 months on Count 3 and a consecutive term of 84 months on Count 4, for a total of 171 months' imprisonment, to be followed by concurrent individual 5-year terms of supervised release on each count.

Parks began his supervised release period on May 27, 2016. About two years later, the Southern District of Ohio transferred jurisdiction over his supervision to the Northern District of Ohio. Shortly after the transfer, his probation officer filed a violation report with the court, advising that Parks had violated his conditions of supervision by committing two new robbery-related offenses in Ohio in May and July of 2018. As to the first offense, Parks had been arrested and charged with attempting to rob a woman at gun point while she was opening her business for the day in Cuyahoga County. No one could identify Parks as the suspect, but a witness saw the suspect flee into a wooded area, and police apprehended Parks as he was exiting the same wooded area moments after officers arrived on the scene. Parks posted bond but failed to appear at the next scheduled court hearing. The case remained pending at the time of the violation report.

The second offense involved another bank robbery. Parks was tried by jury in state court and convicted of robbing a Fifth Third Bank in Lake County. The evidence at trial showed that Parks had entered the bank wearing a motorcycle helmet and carrying a gas can. He demanded

money from an employee while waving the gas can and instructing the employee not to give him any dye packs. After collecting the money, he fled the scene in a white Lexus. Authorities discovered that the vehicle, which had subsequently been set on fire and abandoned, was registered to Parks. Following the jury's guilty verdict, the court sentenced him to 22 years' imprisonment, which he began serving in 2019. Accordingly, at the time of the violation report, Parks was serving a 22-year sentence for the Lake County conviction and had another case pending against him in Cuyahoga County.

On November 20, 2019, the district court held a hearing on the reported violations. The court indicated that it would dismiss the violation relating to the pending Cuyahoga County case as moot and hold further violation proceedings in abeyance to allow time for Parks to appeal his Lake County conviction. The court held the next hearing on August 3, 2022, during which Parks admitted to the violations arising from both robberies. The court found that he had violated the conditions of his supervised release and imposed an above-Guidelines sentence of five years' imprisonment to run consecutive to his state sentence. Parks objected to the district court's upward variance at the conclusion of the hearing. He now appeals.

**II.**

*Standard of Review.* This court typically reviews a district court's sentencing determinations for an abuse of discretion, irrespective of whether the sentence falls within or outside the Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). This includes sentences for violations of supervised release. *United States v. Adams*, 873 F.3d 512, 516 (6th Cir. 2017). Sentences must be both procedurally and substantively reasonable. *Id.* When reviewing a sentencing determination, we "must first ensure that the district court committed no significant procedural error[.]" *Gall*, 552 U.S. at 51. To ensure that a sentence is procedurally sound, the

district court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the 18 U.S.C. § 3553(a) factors, select a sentence based on facts that are not clearly erroneous, and adequately explain the sentence including any deviation from the Guidelines. *Id.* If the sentence is procedurally sound, we then look to the totality of circumstances to determine whether the sentence is substantively reasonable. In that vein, the sentence must be "sufficient, but not greater than necessary, to comply with the purposes of sentencing." *Id.* at 50 n. 6 (quoting § 3553(a) (internal quotation marks omitted)). Sentences within the Guidelines enjoy a presumption of substantive reasonableness. *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). But the converse is not true; a sentence outside the Guidelines is not presumptively unreasonable. *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016). We still afford "due deference" to a district court's decision to vary from the Guidelines. *Gall*, 552 U.S. at 51.

Notably, because we "do not require defendants to challenge the 'reasonableness' of their sentences in front of the district court," an abuse-of-discretion standard will always apply to challenges to the substantive reasonableness of a sentence. *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). However, if a defendant does not challenge the procedural reasonableness of his sentence before the district court, then any such challenge on appeal will be subject to plain-error review. *Id.* at 385.

Here, Parks objected, pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), to the district court's "upward variance" after his sentence was pronounced at the close of his supervision-violation hearing. The government maintains that Parks's objection was too vague to preserve Parks's procedural-reasonableness challenge on appeal. *See id.* at 871 ("A party must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.") (internal quotation marks omitted)). We agree. Parks's

objection contained no information about the reasoning or authority supporting his objection to the upward variance. Accordingly, we review his procedural reasonableness challenge for plain error. *See United States v. Harmon*, 607 F.3d 233, 238 (6th Cir. 2010) ("Because counsel's response to the *Bostic* question was too vague to give the district court an opportunity to correct its purported procedural errors, we conclude that a plain-error standard of review applies to [the defendant's] procedural reasonableness arguments.").

*Sentencing Determination.* The statutory maximum penalties for Parks's supervised release violations were 3 years' imprisonment in relation to his underlying bank robbery conviction, 5 years' imprisonment in relation to his underlying brandishing a firearm conviction, and 5 years of supervised release for each. The advisory Guideline range for the violations was 27 to 33 months. Toward the outset of the August 3 violation hearing, the district court noted that it had discretion to determine whether the sentence to be imposed would be consecutive or concurrent. The court then gave both sides an opportunity to speak. Parks's counsel asked the court to either end Parks's federal supervision or impose a sentence to run concurrently with his 22-year state court sentence. Speaking on his own behalf, Parks expressed his intent to correct his behavior going forward. After he spoke, the district court noted the sadness of the fact that Parks was 25 years old at the time of his first bank robbery, and 42 years old at the time of the violation hearing. For its part, the government requested a sentence toward the high end of the Guidelines range, to be served consecutively to the state court sentence.

After hearing from both parties, the court applied the relevant § 3553(a) factors. It emphasized the danger posed by Parks's record of conduct, explaining that it would look to the statutory maximum rather than the Guidelines. The court then considered Parks's history and characteristics—focusing primarily on his criminal history. It acknowledged that he was already

facing a 22-year sentence in state court for a robbery conviction but expressed concerns with Parks's history of robberies and recent conduct involving arson. The court also reviewed the nature and circumstances of Parks's violations. It highlighted the fact that Parks committed the Lake County bank robbery while he was on bond for attempting to rob a woman in Cuyahoga County—and this all while he was on supervised release for a federal robbery conviction. The court pointed out that Parks destroyed the vehicle he used to flee the most recent robbery at Fifth Third Bank by setting it on fire and gave the victim tellers specific instructions as he demanded the money—facts reflective of his robbery experience.

The court explained that a long sentence was necessary to protect the public and adequately deter him from committing more violent crimes, which had become a pattern for Parks. The court concluded that the preceding factors warranted a sentence above the Guidelines and consecutive to Parks's state sentence. It also found that Parks's participation in the limited programming afforded in state prison did not outweigh the violent nature of his offenses and the danger that he posed to the community.

*Procedural Reasonableness.* Parks argues that the district court referenced a clearly erroneous fact in its sentencing discussion which rendered his sentence unreasonable. Specifically, he contends that the district court relied on the U.S. Bank robbery, which was not related to his underlying federal conviction. Parks fashions this argument as a challenge to the substantive reasonableness of his sentence. However, the government correctly points out that this is a procedural-reasonableness argument. *See Gall*, 552 U.S. at 51 (describing arriving at a sentence based on a clearly erroneous fact as procedural). To prevail under the plain error standard of review, Parks must "show (1) error (2) that 'was obvious or clear,' (3) that 'affected [his] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial

proceedings.'" *Vonner*, 516 F.3d at 386. "The plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (citation omitted). We find that Parks's procedural reasonableness challenge fails because he cannot show that the district court committed plain error.

The first two prongs of the plain-error analysis are undisputed, as the district court did make a statement that was clearly erroneous. Parks's underlying federal convictions were for the First Federal Savings robbery and the related charge of brandishing a firearm during and in relation to a crime of violence offense; he was not charged with the U.S. Bank robbery. Yet the district court twice described Parks's underlying federal conviction as relating to two robberies instead of one. On the first occasion, the court stated:

> As I read [the presentence report], you can tell this was also a terrifying event. The original robbery that took place down in -- I believe it was only one, at least as it relates here it appears to be one, on a quick scan here.
>
> *No. There were actually more. There was a robbery at U.S. Bank in Columbus. And there was a robbery in Pataskala, Ohio, First Federal Savings.*
>
> And then there was a female victim who was injured fleeing, while these defendants were fleeing from the robbery. She sustained life-threatening injuries, was treated. She suffered traumatic head injuries. Her right leg was broken. Both bones in her left arm were broken. It goes on.

On the second occasion, the court stated:

> [T]he original PSI . . . gives you all the details about the offense conduct that, again, earned him an 87 plus 84, which I'm not suggesting that's a short sentence, but on the facts and the record, a guideline sentence for that kind of -- for *those robberies,* and given the nature of *them*, injuries to an innocent individual on the highway, death of someone involved, as I read it, both of those facts. And then he comes back in the community and then he once again quickly returns to his criminal behavior, his robberies involving the events that we describe here.

The district court's allusion to Parks's involvement in the U.S. Bank robbery was a clear error. The record does not suggest that Parks was involved in that robbery and the government does not argue that he was. Nor does the parties' plea agreement or the PSR suggest that the U.S. Bank robbery qualified as relevant conduct for purposes of Parks's original sentencing. Still, we will only find that Parks's sentence was procedurally unreasonable if he can make the final two requisite showings to establish plain error. *Vonner*, 516 F.3d at 386. He cannot.

The third prong requires Parks to show that the district court's error affected his substantial rights. *Id.* "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). In other words, Parks can only prevail if the district court relied on the erroneous fact to such a degree that it selected his sentence based on the U.S. Bank robbery. *Gall*, 552 U.S. at 51; *Wilson*, 614 F.3d at 224. *Wilson* teaches us that "a court relies on clearly erroneous facts when the sentencing judge relies upon 'erroneous information' and 'the information in question appears to have been an important factor in determining the sentence.'" *United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012) (quoting *Wilson*, 614 F.3d at 225 n.3) (brackets omitted).

For instance, in *Cunningham*, we rejected a defendant's argument that the district court selected his sentence based on a clearly erroneous fact where the defendant insisted that the district court improperly relied on statistics measuring recidivism rates for his offense rather than the Sentencing Commission's relevant recidivism figures. 669 F.3d at 730–31. Unpersuaded, we explained that the defendant "overstate[d] the district court's reliance on those statistics." *Id.* Instead, the district court relied more on the defendant's explanation for his offense, his failure to remedy the impulse that led to his offense, and his commemoration of his illegal acts through

photographs and videos. *Id.* at 730–31. Seeing no need to determine whether the district court erred in relying on those studies, we found that its "reliance was not excessive in this case, especially when one considers the manner in which the court comprehensively weighed and balanced a multiplicity of sentencing factors." *Id.* at 731.

By contrast, this court found that the district court in *Wilson* did consider an erroneous fact an important factor in its decision to impose an above-guidelines sentence. 614 F.3d at 220. The defendant in that case pleaded guilty to mail fraud and admitted she used several stolen money orders, provided to her by another unnamed party, to make purchases. *Id.* at 221. In a written sentencing opinion, the district court erroneously stated that Wilson had stolen several money orders and cashier's checks. *Id.* at 223. It further explained that the circumstances of the offense were serious because the defendant had stolen the money orders for the purpose of defrauding businesses. *Id.* at 244. When the district court described the circumstances to emphasize the seriousness of the offense, it reiterated that the defendant had stolen numerous instruments and stated that the seriousness and circumstances of the offense warranted a lengthy sentence. *Id.* We vacated the sentence, explaining that the first two prongs of the plain error analysis were satisfied because the district court's statement that the defendant had stolen the instruments herself was an obvious or clear error. *Id.* In particular, the plea agreement made clear that someone else had stolen the instruments, not the defendant. *Id.* Further, "[i]n light of [the district court's] language, [it was] clear that the district court based [the defendant's] sentence on the fallacious premise that she had stolen myriad financial instruments." *Id.* The defendant also satisfied the third prong because, "[g]iven the prominence of [the defendant's] supposed theft in the district court's sentencing opinion, it [was] plain that her sentence might well have been different if the district court had been aware of the true circumstances of her offense." *Id.* at 225. Finding that the

defendant had also made the requisite showing for the fourth prong of the plain-error analysis, we held that the sentence was procedurally unreasonable. *Id.* at 225–26.

Turning to this case, we find that although the district court erroneously referenced the U.S. Bank robbery, that robbery was not an important factor in the district court's sentencing determination.

Parks understandably takes issue with the district court's apparent, early confusion about whether his underlying federal convictions involved one or two robberies. But each time the district court referenced both robberies, it followed with discussion limited to the facts of the robbery for which Parks was convicted. For example, the facts regarding the injuries and death of non-party individuals that the district court discussed relate solely to the First Federal Savings and Loan robbery. Moreover, the district court later corrected itself when it mischaracterized Parks' underlying federal convictions as involving two robberies instead of one:

> [Parks's] lengthy sentence earlier for a bank robbery or robberies in – *I'll say robbery* down in the Southern District as described in the PSI, this is just a defendant, unfortunately, a high-risk offender who must be deterred and must be incarcerated for a lengthy period of time.

Like the district court in *Cunningham*, the record here suggests that the district court did not consider the erroneous fact important to its sentencing determination. Although the district court in *Cunningham* expressed concern with studies—which the defendant maintained were erroneous—the district court had determined that the defendant posed a high risk of recidivism largely based on factors extraneous to the studies. *Cunningham*, 669 F.3d at 730–31. We thus found that the district court may have relied on the studies, but its reliance "was not excessive[,]" "especially when one considers the manner in which the court comprehensively weighed and balanced a multiplicity of sentencing factors." *Id.* at 731. The same is true here. The record

supports that to the extent the district court referenced the U.S. bank robbery, its discussion largely focused on the pattern of robberies evident in Parks's criminal history, the need to deter him from continuing to commit robberies, and the need to protect the public. The court's overall point surrounding his references to the underlying robbery in the indictment was that only 2 years into Parks's 5-year term of supervised release, after serving substantial time in federal prison for robbery, he was charged in state court with another robbery. Then, while on bond after his arrest for that charge, he committed yet another robbery for which he was tried by a jury and convicted, all while he was still on supervised release for the underlying federal robbery conviction. This behavior tends to establish a pattern without any consideration of the U.S. Bank robbery.

The court also relied heavily on the nature and circumstances of Parks's violation offenses, including that the most recent robbery of Fifth Third Bank also included arson, and that Parks's behavior indicated that he was becoming a seasoned robber. For example, Parks warned the Fifth Third Bank employees not to give him any dye packs, likely because the employees gave him and his codefendants dye packs during the First Federal Savings and Loan robbery. Just as the defendant in *Cunningham* "overstates the district court's reliance" on allegedly erroneous statistics, Parks overstates the district court's reliance on the U.S. bank robbery in this case. *Id.* at 730; *see also Adams*, 873 F.3d at 518–20 (finding that the district court did not rely on clearly erroneous facts just because it mentioned those facts, but it did rely on erroneous information provided by the government when it listed the information as a reason for the length of its sentence); *United States v. Hatcher*, 947 F.3d 383, 394 (6th Cir. 2020) (determining that district court's error in referring to defendant as having two prior robbery convictions when defendant had only one was harmless where the district court did not rely on the error in calculating defendant's criminal history score nor was there evidence that this mistaken statement affected the sentence).

Importantly, the record in this case at least suggests that the district court was attempting to disclaim reliance on the U.S. Bank robbery by correcting itself on the number of robberies that Parks committed in the underlying federal conviction, something we have found persuasive in the past. *See, e.g. United States v. Aguilar-Calvo*, 945 F.3d 464, 469 (6th Cir. 2019). Toward the conclusion of the district court's discussion, when it stated that Parks was a "high-risk offender who must be deterred and must be incarcerated for a lengthy period of time," it corrected its misstatement of the underlying conviction. Specifically, in referencing Parks's "lengthy sentence earlier for a bank robbery or robberies," it immediately corrected itself by stating, "I'll say *robbery* down in the Southern District as described in the PSI," before stating that a variance was warranted. It is true that the district court in *Aguilar-Calvo* explicitly disclaimed reliance on the government's improper arguments, whereas the disclaimer in this case is implied by the district court's self-correcting statements on the record. *Id.* But the explicit disclaimer in *Aguilar-Calvo* may have been more warranted because that district court applauded and explicitly entertained the improper information. *Id.* The district court's references to the U.S. bank robbery in this case were much less excessive, indicating that it did not select Parks's sentence based on that robbery.

Moreover, unlike *Wilson*, where the court repeatedly emphasized the seriousness of the fact that the defendant had stolen several financial instruments when the defendant had not pleaded guilty to stealing any, the district court here never discussed the circumstances of the U.S. Bank robbery. 614 F.3d at 224–25. Further, while the district court's discussion of the defendant's role in stealing the financial instruments in *Wilson* was at the forefront, the erroneous fact in this case can hardly be described as "promin[ent]" to the district court's colloquy. *Id.* at 225.

Therefore, Parks's procedural challenge fails on the third prong of the plain-error analysis because he has not shown that the error affected his substantial rights. Accordingly, the district

court's reference to the U.S. Bank robbery did not render Parks's sentence procedurally unreasonable.

*Substantive Reasonableness.* Parks argues that his sentence is substantively unreasonable because the district court did not properly weigh the § 3553(a) factors. We disagree.

"The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 633 (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)). Where, as here, the district judge imposes "an outside-Guidelines sentence. . . [the judge] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. Even so, while "a major departure should be supported by a more significant justification than a minor one," the Supreme Court has cautioned that the district court's determination should still be based on reasoned discretion, not math. *Id.* at 49–50. Each of the § 3553(a) factors could weigh more or less depending on the circumstances of a particular case. *See id.*; *cf. United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) ("It is reasonable, however, for the district court to have given significant weight to general deterrence and retribution when sentencing [the defendant] in light of the extent and duration of his drug trafficking"). In this vein, "it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable." *Gall*, 552 U.S. at 59. Rather, we must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 51.

Importantly, we do not "require[] the 'ritual incantation' of the factors to affirm a sentence." *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005) (quoting *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998)). "Nor is there a requirement that the district court make specific findings relating to each of the factors considered." *Washington*, 147 F.3d at 491. As relevant here, the § 3553(a) factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the seriousness of the offense;" "adequate deterrence;" and "the need . . . to protect the public." 18 U.S.C. § 3553(a).

We find that the district court did not abuse its discretion in weighing the factors and imposing an above-Guidelines sentence. The district court placed great weight on Parks's history and his pattern of conduct, emphasizing throughout sentencing on the violations that Parks served substantial time in federal prison for robbery and resumed committing robberies only 2 years into his 5-year term of federal supervised release. These observations support the need for deterrence. The district court also found that the nature and circumstances of the robberies were particularly egregious and posed a threat to the public. For support, the court highlighted the facts that (1) the offense conduct for the underlying federal conviction resulted in one person's death and serious injuries to another; (2) the first violation of his supervised release, which involved Parks attempting to rob a woman at gun point, was "very serious"; and (3) the second violation involved Parks waving a gas can in front of bank employees and setting his getaway vehicle on fire.

The court also noted that Parks started out in his twenties at the time of the first robbery and had progressed to his early forties by the time of the supervised release violation robberies, leading the court to conclude that Parks's rehabilitation efforts in state prison did little to mitigate the danger that he poses to the community. The district court explained that it relied on the statutory maximum rather than the Guidelines because, in its view, "[s]ome individuals just cannot,

unfortunately, live in society and do so safely." It noted that it was varying upward largely based on the need to deter Parks who had not been discouraged by the lengthy sentence he had previously served for a similar offense, and to protect the public from his pattern of violent crimes. Based on the district court's balanced discussion of the factors and its explanation for the variance, we find that it exercised reasoned discretion in imposing Parks's sentence.

Parks resists this conclusion, arguing that the district court improperly relied on the facts in his presentencing report from his underlying offense that the original sentencing judge in the Southern District of Ohio had already considered when he pleaded guilty to the underlying federal conviction. But a district court may consider past conduct already accounted for by the Guidelines when the purpose is to demonstrate a pattern. *See Perez-Rodriguez*, 960 F.3d at 755. True, we reversed Perez-Rodgriguez's above-Guidelines sentence where the district court purported to rely on the pattern of ongoing risk of public harm posed by the nature of the defendant's dangerous conduct. *Id.* at 756. But the problem with the district court's reference to a pattern in that case was not that acknowledging patterns in a defendant's conduct is improper. *Id.* at 755. Indeed, we have "affirmed upward variances . . .where the defendant not only demonstrated a pattern of [illegal conduct], but also committed crimes subsequent to [his punishment] that endanger the public." *Id.* Rather, we found that the district court's naming of only one instance of the defendant's conduct posing a risk of public harm was simply inadequate to establish a pattern. *Id.* at 757. That is not the case here. The record comfortably establishes that Parks's conduct is part of a pattern of robberies that poses a danger to the public. The district court did not abuse its discretion in considering that pattern in its sentencing determination.

Second, Parks argues that the district court relied too heavily on the U.S. Bank robbery. But, as already discussed, the district court placed little, if any, weight on that robbery. The district

court did erroneously reference the U.S. Bank robbery, but considered in context, the error was inconsequential.

Third, Parks contends that the district court did not consider his age and post-offense rehabilitation efforts in its sentencing determination. But the record belies this argument. At sentencing, the district court noted that Parks was in his twenties when he committed his first armed bank robbery, and described the circumstances as, "[v]ery sad," after confirming that Parks was 42 years old at the time of the hearing on his supervised release violation. The court recognized that Parks would spend "a substantial period of his life in custody[,]" and would be significantly older, but expressed uncertainty as to whether Parks will have modified his behavior by the time of his release. Regarding Parks's rehabilitation efforts, the court stated that such "limited programming . . . at the state system [did] not outweigh the nature and danger [that he] pose[d] to the community." It was within the district court's discretion to assign little weight to these factors on the basis of the record as a whole. *See Sexton*, 512 F.3d at 332 ("Considering the deleterious effect that [the defendant's] conduct would naturally have on a community, it was not unreasonable for the district court to give less weight to his personal characteristics.").

Affording due deference to the district court, we find that Parks's sentence is substantively reasonable.

*Sentencing Consecutive Terms.* Parks also argues that the district court "did not make the proper finding to impose a consecutive sentence." Doc. 18, Page: 17; *see also id.*, Page: 22 ("The Court did not make the proper factual finding supporting its imposition of a consecutive sentence to the statutory maximum in this case."). However, Parks offers no analysis or authority to support this argument, so it is unclear what part of the district court's discussion he intends to challenge on this front. The argument fails for that reason alone. *See United States v. Layne*, 192 F.3d 556,

566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))

This argument also fails on the merits, as the district court did not abuse its discretion in imposing a consecutive sentence. "A challenge to a court's decision to impose a consecutive or a concurrent sentence is not easily classified as 'substantive' or 'procedural.'" *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). Regardless, this court reviews a challenge to the consecutive nature of a sentence for an abuse of discretion. *Id.* at 342. "A court does not abuse its discretion when it 'makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense.'" *Id.* (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)). In determining whether to impose a consecutive sentence, district courts must consider the § 3553(a) factors, and "should also consider the relevant Guidelines recommendations and policy statements." *Id.*; *see also* 18 U.S.C. § 3584. Both authorities support the district court's decision here.

As discussed, the district court considered the § 3553(a) factors and noted its discretion to impose the sentence either concurrently or consecutively. The court also specifically explained its decision to impose a consecutive sentence:

> [C]onsecutive is the appropriate sentence because the defendant has shown and proven over many years that he's a danger and a risk to the community, a risk to the individuals working at banks, a risk to individuals on the roadway, as happened in the past, and it's all, unfortunately, just the kind of action and activities that require a lengthy sentence in addition to the state court sentence.

As noted in the superseding violation report, the Guidelines recommend that sentences imposed upon revocation of supervised release be served consecutive to any sentence already being served. U.S.S.G. § 7B1.3(f); *see also* U.S.S.G. § 5G1.3 cmt. n.4(C). The district court's rationale comports

with this recommendation and Parks points to no particular error in the court's reasoning.  Nor do we see any.

### III.

For the reasons stated above, we **AFFIRM**.